IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS GAMBLING RECOVERY LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>KALSHI INC.; KALSHIEX LLC; KALSHI KLEAR INC.; KALSHI KLEAR LLC; SUSQUEHANNA INTERNATIONAL GROUP, LLP; SUSQUEHANNA GOVERNMENT PRODUCTS, LLLP; ROBINHOOD MARKETS, INC; ROBINHOOD DERIVATIVES, LLC; and WEBULL CORPORATION,<br><br>            Defendants. | Case No. 1:25-cv-12705-FDS<br><br>Judge F. Dennis Saylor, IV |

**MEMORANDUM OF DEFENDANTS ROBINHOOD DERIVATIVES, LLC
AND ROBINHOOD MARKETS, INC. IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF ISSUES ................................................................................................. 3

BACKGROUND ................................................................................................................. 3

     A.    Federal Regulation Of Event Contracts Under The Commodity Exchange Act......3

     B.    Kalshi's CFTC-Regulated Event Contracts And Robinhood's Platform ................. 4

     C.    The Statute of Anne And Plaintiff's Lawsuit ........................................................... 5

ARGUMENT ....................................................................................................................... 6

  I.    This Court Has Federal-Question Jurisdiction Under The *Grable* Doctrine ..................... 6

     A.    Plaintiff's Claim Necessarily Raises A Federal Issue............................................... 6

     B.    The Federal Issues Are Disputed And Substantial ................................................... 12

     C.    The Federal-State Balance Confirms This Case Belongs In Federal Court............. 14

  II.    This Court Has Diversity Jurisdiction Under CAFA ....................................................... 15

CONCLUSION.................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982)........................................................................................................18

*Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*,
    977 F.2d 1147 (7th Cir. 1992) .....................................................................................15

*Amoche v. Guarantee Tr. Life Ins. Co.*,
    556 F.3d 41 (1st Cir. 2009)...........................................................................................16

*AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*,
    15 F.4th 551 (1st Cir. 2021)..............................................................................12, 13, 14

*Cardarelli Constr. Co. v. Groton-Dunstable Reg'l Sch. Dist.*,
    349 N.E.2d 383 (Mass. App. Ct. 1976) .......................................................................10

*Chamberlain v. Employers' Liab. Assur. Corp.*,
    194 N.E. 310 (Mass. 1935) ..........................................................................................10

*Coll. of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*,
    585 F.3d 33 (1st Cir. 2009).....................................................................................17, 18

*Cook v. Hanover Ins. Co.*,
    592 N.E.2d 773 (Mass. App. Ct. 1992) .......................................................................10

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
    583 U.S. 416 (2018).....................................................................................................10

*Donovan v. Eastern Racing Association*,
    86 N.E.2d 903 (Mass. 1949) ......................................................................................9, 10

*Empire Healthchoice Assur., Inc. v. McVeigh*,
    547 U.S. 677 (2006).....................................................................................................12

*Freeman v. Blue Ridge Paper Prods., Inc.*,
    551 F.3d 405 (6th Cir. 2008) .......................................................................................16

*Georgia Gambling Recovery LLC v. Kalshi Inc.*,
    No. SC2025CV001749 (Ga. St. Ct.)..............................................................................5

*Gibney v. Olivette*,
    82 N.E. 41 (Mass. 1907) ..................................................................................5, 7, 8, 9, 11

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)...............................................................................6, 13, 14, 15

*Gunn v. Minton*,
    568 U.S. 251 (2013).........................................................................................1, 6, 7, 12, 13

*Harvey v. Merrill*,
    22 N.E. 49 (Mass. 1889) ................................................................................................7

Page(s)

*Illinois Gambling Recovery LLC v. Kalshi Inc.*,
　　No. 2025L007524 (Ill. Cir. Ct.) ................................................................5

*Insight Sec., Inc. v. State St. Bank & Tr. Co.*,
　　712 F. Supp. 3d 202 (D. Mass. 2024) ......................................................13

*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,
　　659 F.2d 1259 (4th Cir. 1981) .................................................................18

*Jan Co. Cent, Inc. v. Comm'r of Revenue*,
　　405 Mass. 686 (1989) ..............................................................................10

*KalshiEX LLC v. CFTC*,
　　119 F.4th 58 (D.C. Cir. 2024) ..................................................................14

*KalshiEX LLC v. Flaherty*,
　　2025 WL 1218313 (D.N.J. Apr. 28, 2025) ...............................................13

*KalshiEX LLC v. Hendrick*,
　　2025 WL 1073495 (D. Nev. Apr. 9, 2025) ...............................................13

*Kentucky Gambling Recovery LLC v. Kalshi Inc.*,
　　No. 25-CI-00512 (Ky. Cir. Ct.) ................................................................5

*Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*,
　　121 F.4th 228 (1st Cir. 2024) ...................................................................18

*Landers v. Eastern Racing Association*,
　　97 N.E.2d 385 (Mass. 1951) ......................................................................9

*LG Display Co. v. Madigan*,
　　665 F.3d 768 (7th Cir. 2011) ...................................................................19

*Lyons v. Coe*,
　　59 N.E. 59 (Mass. 1901) ............................................................................7

*Massachusetts v. Exxon Mobil Corp.*,
　　462 F. Supp. 3d 31 (D. Mass. 2020) ........................................................18

*W. Virginia ex rel. McGraw v. Comcast Corp.*,
　　705 F. Supp. 2d 441 (E.D. Pa. 2010) .......................................................17

*Mullinax v. J.M. Brown Amusement Co.*,
　　508 S.E.2d 848 (S.C. 1998) .......................................................................8

*Mun. of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*,
　　726 F.3d 8 (1st Cir. 2013) .............................................................12, 13, 14

*NASDAQ OMX Grp., Inc v. USB Sec., LLC*,
　　770 F.3d 1010 (2d Cir. 2014) ..................................................................15

iii

Page(s)

*Ohio Gambling Recovery LLC v. Kalshi Inc.*,
No. 2025CV01517 (Ohio Ct. C.P.)......................................................................5

*One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*,
716 F.3d 218 (1st Cir. 2013)......................................................................14, 15

*Patriots for Legal Equality, LLC v. Draft Kings, Inc.*,
2016 WL 11972483 (Mass. Super. Ct. Feb. 23, 2016) ........................................17

*Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Env't Mgmt.*,
585 F.3d 42 (1st Cir. 2009).............................................................6, 11, 12, 15

*Robinhood Derivatives LLC v. Campbell*,
1:25-cv-12578 (D. Mass. 2025) ......................................................................13

*Salamon v. Taft Broad. Co.*,
475 N.E.2d 1292 (Ohio App. 1984)...................................................................17

*South Carolina Gambling Recovery LLC v. Kalshi Inc.*,
No. 2025CP3700563 (S.C. Ct. C.P.) ..................................................................5

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)................................................................................15, 16

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)......................................................................................18

*Tyngsboro Sports II Solar v. Nat'l Grid USA Serv. Co.*,
88 F.4th 58 (1st Cir. 2023)..............................................................................14

*Wilkins v. Genzyme Corp.*,
93 F.4th 33 (1st Cir. 2024)..............................................................................16

*Williams v. Emps. Mut. Cas. Co.*,
845 F.3d 891 (8th Cir. 2017) ..........................................................................17

*Yee v. KalshiEX LLC*,
1:25-cv-08585 (S.D.N.Y. Oct. 16, 2025)...........................................................13

**Statutes**

Dodd-Frank Act of 2010, Pub. L. 111-203, 124 Stat. 1376 (2010) ................................3

7 U.S.C. § 1a(9) ....................................................................................................3

7 U.S.C. § 1a(19)(iv)...........................................................................................4, 7

7 U.S.C. § 1a(47)(A)(ii).....................................................................................3, 4, 7

7 U.S.C. § 2(a)(1)(A) .......................................................................................3, 7, 11

**Page(s)**

7 U.S.C. § 6c(g) ...................................................................................................4

7 U.S.C. § 6f ...................................................................................................4, 7

7 U.S.C. § 7(a) ...................................................................................................4

7 U.S.C. § 7(d) ...................................................................................................4

7 U.S.C. § 7a-2(c) ...................................................................................................4

7 U.S.C. § 7a-2(c)(1) ...................................................................................................7

7 U.S.C. § 7a-2(c)(5)(C)(i) ...................................................................................................4

7 U.S.C. § 8 ...................................................................................................4

7 U.S.C. § 9(1) ...................................................................................................4

7 U.S.C. § 25(a) ...................................................................................................15

7 U.S.C. § 25(b) ...................................................................................................15

7 U.S.C. § 25(c) ...................................................................................................15

18 U.S.C. § 1084(a) ...................................................................................................6, 11

28 U.S.C. § 1331 ...................................................................................................3

28 U.S.C. § 1332(d) ...................................................................................................2, 3, 15

28 U.S.C. § 1332(d)(1)(B) ...................................................................................................16, 17

28 U.S.C. § 1332(d)(2) ...................................................................................................15

28 U.S.C. § 1332(d)(5)(B) ...................................................................................................15

Mass. Gen. Laws ch. 137, § 1 ...................................................................................................5, 6, 10

**Regulations**

17 C.F.R. § 38.151(b) ...................................................................................................4

**Other Authorities**

CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020) ...................................................................................................4

Mass. Joint Comm. On Econ. Dev. & Emerging Tech., "Section By Section Summary" H. 3697 (2011) ...................................................................................................10

NFA, *Robinhood Derivatives LLC, Profile 042478* ...................................................................................................4

**Page(s)**

Emily R. Siegel, *Kalshi Suits Using Arcane 1700s Law Are Lit Funder's Big Bet*,
Bloomberg Law (Oct. 2, 2025) ...................................................................................................5

Veridis Management LLC, https://www.veridismgmt.com/contact ................................................5

## INTRODUCTION

Plaintiff Massachusetts Gambling Recovery LLC—a recently formed, out-of-state shell company—brought this suit to recover alleged gambling losses incurred by thousands of Massachusetts residents.  But this suit is nothing more than an attempt to interfere with the trading of federally regulated derivatives on a federally regulated exchange.  While Plaintiff coyly portrays the suit as a garden-variety state tort action, it is nothing of the sort.  Instead, Plaintiff's claim requires determining the status under *federal* law of "event contracts"—a type of derivative contract traded under the auspices of the federal Commodity Exchange Act (CEA) and subject to the exclusive jurisdiction of the Commodity Futures Trading Commission (CFTC).  As Plaintiff's own allegations make clear, these event contracts are the subject of millions of trades nationwide with an overall market size in the billions.  This is a federal law dispute of unquestionable national importance, arising in a suit attempting to aggregate the claims of thousands of Massachusetts residents.  For two reasons, this case belongs in federal court.

First, federal courts have jurisdiction when embedded federal issues are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  All four factors are met here.  Deciding federal law issues is inescapable in resolving Plaintiff's claim.  Plaintiff seeks to hold Robinhood Markets, Inc., and Robinhood Derivatives, LLC (together, "Robinhood") liable for violating Massachusetts's Statute of Anne because Robinhood allows its users to buy and sell event contracts on a CFTC-regulated exchange operated by codefendant KalshiEX LLC ("Kalshi").  To do so, Plaintiff must establish that the trading of these contracts on Kalshi's exchange is illegal.  But under the CEA, the event contracts at issue here *are* legal.  Plaintiff tries to downplay this unavoidable federal issue as an affirmative defense, but

Massachusetts's courts have long made clear that a plaintiff may only recover under the Statute of Anne if it pleads and proves that any losses are the result of unlawful activity. Plaintiff cannot prove its claims otherwise. Plaintiff's own complaint confirms the centrality of federal law in this case by invoking the federal Wire Act and alleging repeatedly (and wrongly) that Defendants' activities violate federal law. ECF 1-1 (Compl.) ¶¶ 53-56.

This federal issue—whether event contracts are lawful under federal statutes—is disputed, substantial, and capable of resolution without disrupting the federal-state balance of judicial responsibilities. It directly implicates a decision by the CFTC within its exclusive jurisdiction to permit the trading of event contracts. And this federal issue is outcome-determinative here and critically important nationwide. Plaintiff's own account of the number of trades (millions), the size of the market (billions), and the number of States allegedly investigating these issues confirms as much. This important federal issue should be resolved in federal court.

Second, the Court independently has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). CAFA confers federal jurisdiction to decide class actions—which it broadly defines to cover suits under state law that resemble Rule 23 class actions—that seek relief on behalf of at least 100 persons if the parties are minimally diverse and the amount-in-controversy exceeds $5,000,000. *Id.* This case checks every box. Plaintiff seeks to recover "tens of millions of dollars" lost by "thousands of individuals within Massachusetts [that] have lost—and continue to lose—money." Compl. ¶¶ 6, 65. That is a class action in all but name. Plaintiff's effort to disguise that fact and aggregate others' claims *without* satisfying class-action criteria that serve as critical safeguards to defendants is only more reason why CAFA entitles Robinhood to a federal forum.

This Court should deny Plaintiff's motion to remand.

## STATEMENT OF ISSUES

1.      Whether this Court has jurisdiction under 28 U.S.C. § 1331, because Plaintiff's claim necessarily raises a disputed and substantial federal issue properly resolved in federal court.

2.      Whether this Court has jurisdiction under CAFA, 28 U.S.C. § 1332(d), because Plaintiff seeks to recover in a single action tens of millions of dollars on behalf of thousands of unidentified Massachusetts residents who allegedly incurred these losses.

## BACKGROUND

### A.      Federal Regulation Of Event Contracts Under The Commodity Exchange Act

Federal law has long regulated trading of futures contracts and other derivatives. Derivatives are financial instruments whose value depends on an underlying asset or interest. The first federal legislation on derivatives, enacted in 1922 and later amended (and renamed the CEA), focused on grain futures. In 1974, Congress expanded the CEA to cover all "services, rights, and interests" traded via futures contracts. 7 U.S.C. § 1a(9). It also created the CFTC, vesting the agency with "exclusive jurisdiction" over futures trading on regulated exchanges. *Id.* § 2(a)(1)(A).

Event contracts are a type of derivative subject to the CEA. Typically, an event contract presents a binary question (*e.g.*, Will the Federal Reserve cut interest rates?), with prices set by the market and payouts determined by real-world events. For example, the "yes" option for "Will the Fed cut rates?" might sell for $0.20, and the "no" option might sell for $0.80; the contract provides a payout of $1 to the party who took the side that matches the event that actually occurs.

Event contracts have long been subject to the CFTC's "exclusive jurisdiction," 7 U.S.C. §§ 1a(47)(A)(ii), 2(a)(1)(A), and Congress cemented that conclusion in the Dodd-Frank Act of 2010, Pub. L. 111-203, 124 Stat. 1376 (2010). Dodd-Frank expressly provided that the CFTC's "exclusive jurisdiction" includes "swaps or contracts of sale of a commodity for future delivery" traded on CFTC-designated exchanges. 7 U.S.C. § 2(a)(1)(A). And those forms of derivatives are

3

defined to include (*inter alia*) any contract that provides for payment "dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." *Id.* § 1a(47)(A)(ii); *see id.* § 1a(19)(iv) (similar). Dodd-Frank also authorized the CFTC to forbid certain types of event contracts, including those involving terrorism or gaming. *Id.* § 7a-2(c)(5)(C)(i). With exclusive CFTC jurisdiction comes a panoply of rules covering everything from how event contract orders are executed to rules barring any manipulation of event contract prices. *E.g., id.* §§ 6c(g), 7(d), 9(1); 17 C.F.R. § 38.151(b).

### B.    Kalshi's CFTC-Regulated Event Contracts And Robinhood's Platform

Kalshi operates a derivatives exchange that allows buying and selling event contracts. Robinhood operates a financial-services platform that facilitates buying and selling many financial products, from stocks and derivatives to cryptocurrencies. Robinhood allows users to buy and sell event contracts on Kalshi's exchange.

Robinhood and Kalshi have fully complied with the CEA's regulatory framework for trading event contracts. Under the CEA, an entity may register with the CFTC as either a designated exchange or as an intermediary that facilitates customer trades on a designated exchange. 7 U.S.C. §§ 6f, 7(a), 8. To qualify for either type of registration, applicants must meet stringent requirements, including safeguards against market manipulation and conflicts of interest. *E.g., id.* §§ 7(d), 8. Kalshi became a CFTC-designated exchange (called a "designated contract market") in 2020 and began listing event contracts under 7 U.S.C. § 7a-2(c). CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020). Robinhood Derivatives, LLC has been approved as a CFTC-registered intermediary (called a "futures commission merchant") since 2010. *See* NFA, *Robinhood Derivatives LLC, Profile 042478*, https://tinyurl.com/3w2cbt3b.

C.    **The Statute of Anne And Plaintiff's Lawsuit**

Plaintiff is a Delaware LLC created in March 2025, apparently for the sole purpose of litigation.  Plaintiff's mailing address is associated with a litigation-finance firm.  *See* Veridis Management LLC, https://www.veridismgmt.com/contact; Emily R. Siegel, *Kalshi Suits Using Arcane 1700s Law Are Lit Funder's Big Bet*, Bloomberg Law (Oct. 2, 2025), https://tinyurl.com/xtjf8jp4.  The same counsel who represent Plaintiff, on behalf of five similarly named entities (formed the same day), filed nearly identical suits against the same Defendants in five other States.  *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. SC2025CV001749 (Ga. St. Ct.); *Illinois Gambling Recovery LLC v. Kalshi Inc.*, No. 2025L007524 (Ill. Cir. Ct.); *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 25-CI-00512 (Ky. Cir. Ct.); *Ohio Gambling Recovery LLC v. Kalshi Inc.*, No. 2025CV01517 (Ohio Ct. C.P.); *South Carolina Gambling Recovery LLC v. Kalshi Inc.*, No. 2025CP3700563 (S.C. Ct. C.P.).

In each of these cookie-cutter cases, the plaintiff LLC filed a single-count complaint in state court asserting a claim under that State's Statute of Anne.  Those statutes, modeled on an English anti-gambling statute enacted during the reign of Queen Anne, *see* 9 Anne c. 14 (1710), allow the loser in a gambling transaction to recover his losses from the winner.  *See, e.g.*, Mass. Gen. Laws ch. 137, § 1.  If the loser does not sue within a specified period of time, the statutes authorize a third party to sue the winner to recover the losses or a multiple of them.

Massachusetts's Statute of Anne, originally enacted in 1785, applies only to unlawful gambling.  *See Gibney v. Olivette*, 82 N.E. 41, 41 (Mass. 1907); *see also* Mass. Gen. Laws ch. 137, § 1 (no liability for "gaming conducted in licensed gaming establishments pursuant to chapter 23K or sports wagering conducted pursuant to chapter 23N").  Thus, a plaintiff's "right to recover" under the Statute of Anne, "depends upon the fact" that the loser's "contract" with the alleged winner "is illegal."  *Gibney*, 82 N.E. at 41.  If the loser does not sue within three months, a third party can sue

to recover three times the loser's actual losses. *See* Mass. Gen. Laws ch. 137, § 1 ("any other person may sue for and recover in tort treble the value thereof").

The complaint here alleges that the trading of Kalshi's event contracts is illegal wagering "prohibited under federal law," citing the federal Wire Act, 18 U.S.C. § 1084(a). Compl. ¶¶ 53-54. It avers that "thousands" of unidentified Massachusetts residents have lost "tens of millions of dollars" trading such contracts. *Id.* ¶¶ 6, 65. And it asserts that all Defendants are gambling "winners," such that Plaintiff may recover from all Defendants any losses incurred by Massachusetts residents who have not sued within three months. *Id.* ¶¶ 66-67.

Defendants removed the case to this Court. ECF 1. Plaintiff moved to remand. ECF 21.

## ARGUMENT

## I.    This Court Has Federal-Question Jurisdiction Under The *Grable* Doctrine

The Supreme Court has long held "that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Under the *Grable* doctrine, a federal court has federal-question jurisdiction over a state-law claim embedding a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting" the congressionally approved balance of "federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313-14). This Court has federal-question jurisdiction over Plaintiff's Statute of Anne claim because the claim raises a federal issue that satisfies all of the *Grable* elements.

### A.    Plaintiff's Claim Necessarily Raises A Federal Issue

1.    A federal law issue is "necessarily raised" under *Grable* when "it is not logically possible for the plaintiff[] to prevail on this cause of action without affirmatively answering" an "embedded question" of federal law. *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't*

*Of Env't Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009).  A court must look to the "elements" of the plaintiff's claim and ask whether any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn*, 568 U.S. at 259.

Plaintiff's Statute of Anne claim necessarily raises an embedded federal law issue:  whether the event contract transactions challenged by Plaintiff are lawful under the CEA.  Before a plaintiff can recover under Massachusetts's Statute of Anne, the plaintiff must prove that the wagering is "illegal." *Gibney v. Olivette*, 82 N.E. 41, 41 (Mass. 1907) (citing *Lyons v. Coe*, 59 N.E. 59 (Mass. 1901)); *see also Harvey v. Merrill*, 22 N.E. 49, 52 (Mass. 1889) (discussing "illegal" gambling contracts).  As the Massachusetts Supreme Judicial Court has explained, "[t]he right to recover, given to a loser" for losses from alleged "wagering contracts" under the Statute of Anne "depends upon the fact that such a contract is illegal." *Gibney*, 82 N.E. at 41.

To establish an "illegal" event contract, Plaintiff necessarily must contend with federal law because Robinhood's facilitation of event contract transactions on Kalshi's derivatives exchange is—as Robinhood will show—authorized by the CEA.  The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps or contracts of sale of a commodity for future delivery" on designated exchanges, which include event contracts.   7 U.S.C. §§ 1a(19)(iv), 1a(47)(A)(ii), 2(a)(1)(A).  Kalshi is designated by the CFTC as a derivatives exchange, which means that Congress has allowed it to list event contracts for trading unless the CFTC specifically prohibits them—which the CFTC has chosen not to do for any of the contracts at issue here. *Id.* § 7a-2(c)(1).  And Robinhood Derivatives, LLC has registered with the CFTC as a futures com-mission merchant, which allows it to facilitate its customers' event contract transactions on Kalshi's exchange and subjects it to CFTC supervision. *Id.* § 6f.  Federal law thus has authorized each and every one of the transactions that Plaintiff challenges in this case, and Plaintiff's claim

will fail unless it can prove otherwise.

2.    Plaintiff attempts to escape that conclusion by asserting that illegality is not an element of a Statute of Anne claim.  According to Plaintiff, it can recover under the statute even for losses from activity that is "lawful or authorized under a regulatory scheme."  Mot. 5.  The Massachusetts Supreme Judicial Court has repeatedly said the opposite—*i.e.*, that the "right to recover … depends upon the fact that such a contract is illegal."  *Gibney*, 82 N.E. at 41; *see supra* 7.  And Plaintiff identifies no Massachusetts decision supporting its contrary position.  *See* Mot. 5 (citing only *Mullinax v. J.M. Brown Amusement Co.*, 508 S.E.2d 848, 850 n.4 (S.C. 1998)).

Plaintiff unsuccessfully tries to downplay those statements as "cherry-picked language from century-plus old cases decided when all gaming was unlawful."  Mot. 5 (quotation marks and brackets omitted).  But *Gibney*'s discussion of illegality was no stray statement; it was a definitive construction of the Statute of Anne by the highest court in Massachusetts.  82 N.E. at 41.  And the "century-plus old" vintage of *Gibney* and other cases recognizing the illegality requirement can only *enhance* their value in interpreting the centuries-old Statute of Anne.  Mot. 5.  *Gibney* also refutes Plaintiff's argument that the illegality requirement should be relegated to a bygone era when "all gaming was unlawful."  Mot. 5.  The court's statement that the "right to recover" under the Statute of Anne "*depends* upon the fact that such a contract is illegal" makes little sense if, as Plaintiff suggests, what the court meant to say is that statute requires no further inquiry beyond whether gambling has occurred.  82 N.E. at 41 (emphasis added).  And if all gambling were illegal at the time, there would have been no reason to mention illegality except to make clear that it is an element of the claim.

Later Massachusetts cases confirm that the Supreme Judicial Court meant what it said in *Gibney*.  The State's highest court has continued to require a Statute of Anne plaintiff to prove

illegality even *after* the State legalized some forms of gambling.  In *Donovan v. Eastern Racing Association*, 86 N.E.2d 903 (Mass. 1949), for example, the Supreme Judicial Court affirmed the dismissal of a Statute of Anne claim by a third party seeking to recover alleged gambling losses at a horse track.  Although the court had held in 1917 that "[b]etting on a horse race was … within the statute," the Commonwealth had since enacted a "great change" in public policy in 1934 by "licens[ing] horse and dog racing" and pari-mutuel wagering on those races.  *Id.* at 905.  The plaintiff nevertheless sought to recover on the basis that the racetrack's "daily double" wagers and lack of "automatic betting machines" rendered the activity "not within the protection afforded betting under the pari-mutuel system."  *Id.*  The Supreme Judicial Court disagreed, holding that the "facts well pleaded" by the plaintiff were insufficient to state a claim because the alleged wagers were lawful.  *Id.* at 906.

The Supreme Judicial Court reached the same result in *Landers v. Eastern Racing Association*, 97 N.E.2d 385 (1951).  There, the court reiterated that gambling on horse races was "indubitably a violation of the [Statute of Anne] *unless* what was done *was made lawful*."  *Id.* at 388 (emphases added; citing *Donovan*, *supra*).  As in *Donovan*, the court held that the plaintiff's claim failed because he could not show that the alleged gambling was unlawful.  *Id.* at 390-394.  Plaintiff does not identify a single Massachusetts case to the contrary.

Plaintiff argues in the alternative that any illegality requirement is merely an affirmative defense that does not give rise to federal question jurisdiction, rather than an element of a Statute of Anne claim.  Mot. 4-6.  But Massachusetts courts have unequivocally treated illegality as an element.  The Supreme Judicial Court has held that a plaintiff's "*right* to recover" under the Statute of Anne "*depends* upon the fact that such a contract is illegal," *Gibney*, 82 N.E. at 41 (emphases added), and it has affirmed the dismissal of a Statute of Anne claim when a plaintiff's complaint

failed to allege illegality, *see Donovan*, 86 N.E.2d at 905-906.  That is consistent with the general principle of Massachusetts contract law that "[t]he burden of proving" the "illegality" of a contract is "upon the party asserting it" who seeks to disavow their contractual duties.  *Chamberlain v. Employers' Liab. Assur. Corp.*, 194 N.E. 310, 313 (Mass. 1935); *see also Cardarelli Constr. Co. v. Groton-Dunstable Reg'l Sch. Dist.*, 349 N.E.2d 383, 384 (Mass. App. Ct. 1976).  That principle applies readily to a Statute of Anne claim because a plaintiff asserting such a claim likewise seeks to effectively nullify contractual obligations (and claw back alleged losses) as contrary to law.

The statutory clause on which Plaintiff relies (Mot. 4-5)—which renders the Statute of Anne inapplicable to "gaming conducted in licensed gaming establishments pursuant to chapter 23K or sports wagering conducted pursuant to chapter 23N," Mass. Gen. Laws ch. 137, § 1— changes nothing.  That language was added to the statute recently—long after the cases noted above—via "technical" amendments when the Massachusetts legislature legalized certain casinos and sports-gambling activities.  *See* Commonwealth of Mass. Joint Comm. On Econ. Dev. & Emerging Tech., "Section By Section Summary" H. 3697, at 9 (2011), https://ti-nyurl.com/5ctfh55a.  It simply confirms in a belt-and-suspenders fashion what the Supreme Judicial Court has long and consistently held:  that the Statute of Anne applies only to illegal gambling.  That language certainly did not *expand* the scope of the Statute of Anne by newly subjecting *other*, lawful forms of conduct to liability (such as conduct authorized by federal law).  Nor did it silently shift the burden of proving illegality to defendants.  *See Cook v. Hanover Ins. Co.*, 592 N.E.2d 773, 776 (Mass. App. Ct. 1992) ("We assume that statutes do not radically change the law unless the change is clearly expressed."); *cf. Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 431 (2018) ("Congress does not make radical—but entirely implicit—changes through technical and conforming amendments." (quotation marks and brackets omitted)); *Jan Co. Cent, Inc. v.*

*Comm'r of Revenue*, 405 Mass. 686, 691 n.3 (1989) (distinguishing between "technical" and "substantive" amendments).

3.    Plaintiff also argues that, even if illegality is an element of its claim, and even if Robinhood's alleged conduct is legal under federal law, Plaintiff still can prevail by proving illegality exclusively under state law.  Mot. 5; *see* ECF 1-1 ¶ 52.  But Plaintiff (again) cites nothing to support that position.  And it would be surprising, to say the least, if a Massachusetts statute focused on "illegal" conduct subjected parties to *treble damages* for conduct that is, as discussed below, expressly *authorized* by a federal statute:  the CEA.  *Gibney*, 82 N.E. at 41.  It is perhaps for that reason that Plaintiff also alleged in its complaint that the event contracts on Kalshi's exchange violate another federal law (the Wire Act).  Compl. ¶¶ 53-56; 18 U.S.C. § 1084(a).  As Robinhood will show, Plaintiff is wrong about the Wire Act.  But the key for present purposes is that Plaintiff's allegation only confirms that an element of its claim hinges on federal law.  Plaintiff now seeks to downplay its federal Wire Act allegations (Mot. 6), but its resort to federal law in its own complaint underscores the centrality of federal law to this case.

Regardless, even if Massachusetts's Statute of Anne required Plaintiff only to show that conduct is illegal under state law, Plaintiff's claim still would necessarily raise federal issues.  As Robinhood will show, Massachusetts law does not apply here because the CEA preempts it by granting the CFTC "exclusive jurisdiction" over derivatives, including event contracts, traded on CFTC-designated exchanges like Kalshi.  7 U.S.C. § 2(a)(1)(A).  Thus, although preemption generally is an affirmative defense that does not give rise to federal-question jurisdiction, here preemption is not merely "lurking in the wings."  *Rhode Island Fishermen's All.,* 585 F.3d at 50.  Instead, Plaintiff's elemental allegation of illegality under Massachusetts state law "necessarily entails answering the embedded federal question of whether federal law" preempts Massachusetts's anti-

gambling laws as applied to event contracts on CFTC-designated exchanges. *Id.* at 49. It is irrelevant that the Statute of Anne does not "expressly incorporate federal law," as Plaintiff argues. Mot. 5 (brackets omitted). Instead, the relevant question under *Grable* and *Rhode Island Fishermen's Alliance* is whether it is "logically possible" for Plaintiff to prove that Kalshi's event contracts are illegal without "affirmatively answering" a federal question. *Rhode Island Fishermen's All.*, 585 F.3d at 49. The answer here is no. Plaintiff simply cannot avoid the "antecedent (and embedded) federal question" in this case. *Id.*

### B.     The Federal Issues Are Disputed And Substantial

The federal issue in this case is "hotly contested." *Rhode Island Fisherman's All.*, 585 F.3d at 51. To prevail, Plaintiff must prove that federal law does not permit these event contracts. Defendants will argue just the opposite. This is exactly the sort of square federal law dispute "that *Grable* envisioned." *Gunn*, 568 U.S. at 259.

This federal law dispute is also substantial because it is "importan[t]" to "the federal system as a whole." *Gunn*, 568 U.S. at 260. "There are multiple possible ways" for a federal issue to "satisfy this test"—such as when the plaintiff's claim "directly challenges the propriety of an action taken by a federal department, agency, or service," or when it will "otherwise yield a new interpretation of [federal law] which will govern a large number of cases." *AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551, 558 (1st Cir. 2021) (quoting *Mun. of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013)). For several independent reasons, the federal issue here is substantial.

*First*, this case is "centered on the action of a federal agency": the CFTC. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). The Court must decide whether the CFTC's decision to permit trading of the event contracts at issue on a CFTC-designated exchange (Kalshi) through a CFTC-registered intermediary (Robinhood Derivatives, LLC) complies

with the CEA.  Plaintiff pretends this case will simply "decide the liability of [parties] in a private dispute."  Mot. 7 (quoting *Insight Sec., Inc. v. State St. Bank & Tr. Co.*, 712 F. Supp. 3d 202, 207 (D. Mass. 2024)).  But the *actual* dispute "directly draw[s] in question" the decision by the CFTC under the CEA.  *Gunn*, 568 U.S. at 261.  The "intricate and detailed set of federal" regulations governing the trading of event contracts is thus not in the "background," but front and center. *Insight Sec.*, 712 F. Supp. 3d at 207 (quoting *Mayaguez*, 726 F.3d at 17).  Just as the federal government would have a "direct interest in … a federal forum to vindicate its own administrative action," resolution of these federal issues "sensibly belongs in a federal court."  *Grable*, 545 U.S. at 315.

Second, the legality of these event contracts is a recurring and nationally "important issue of federal law that sensibly belongs in a federal court."  *Grable*, 545 U.S. at 315.  Resolution of that issue implicates a "large number of … transactions" with the potential to "destabilize" the market the CFTC otherwise exclusively regulates.  *AMTAX Holdings 227*, 15 F.4th at 558.  Plaintiff's complaint itself tallies millions of trades exceeding a billion dollars in the U.S. event contracts market in the first five months of 2025.  Compl. ¶ 57.  The complaint recites opinions on the legality of event contracts from the nation's largest sports leagues and New Jersey casino interests. *Id.* ¶ 55.  And it alleges that multiple States have initiated investigations into the contracts at issue here.  *Id.*  Meanwhile, multiple lawsuits are ongoing in federal court about the authority of States to regulate event contracts traded on Kalshi's exchange, and a putative nationwide class action asserting Statute of Anne claims was recently filed against Kalshi.  *See, e.g.*, *KalshiEX LLC v. Hendrick*, 2025 WL 1073495 (D. Nev. Apr. 9, 2025); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313 (D.N.J. Apr. 28, 2025); *Robinhood Derivatives LLC v. Campbell*, 1:25-cv-12578 (D. Mass. 2025); *Yee v. KalshiEX LLC*, 1:25-cv-08585 (S.D.N.Y. Oct. 16, 2025).  These cases

follow litigation involving Kalshi and the CFTC itself commenced last year. *KalshiEX LLC v. CFTC*, 119 F.4th 58 (D.C. Cir. 2024). The federal issues here are thus of "broad significance to the federal government," the States, and businesses nationwide. *AMTAX Holdings 227*, 15 F.4th at 558. At the very least, there is an "appreciable measure of risk to the federal sovereign" and the means the CFTC has chosen "to carry out its business." *Id.*; *Mayaguez*, 726 F.3d at 15.

*Third*, the federal issue is "a nearly pure issue of law that could be settled once and for all and thereafter would govern numerous cases." *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 225 (1st Cir. 2013) (internal quotation marks omitted). If event contract transactions are permitted by federal law, that is case-dispositive—Plaintiff cannot prevail. And the resolution of this question will have a broad reach. Plaintiff seeks relief on behalf of "thousands" of individuals relating to event contracts that are still being offered. Compl. ¶ 65. Any of these "thousands" of event contract transactions involving a "loser" located in Massachusetts could give rise to a potential Statute of Anne claim (under Plaintiff's theory), and therefore resolution of Plaintiff's claim could govern a "large number of cases." *Tyngsboro Sports II Solar v. Nat'l Grid USA Serv. Co.*, 88 F.4th 58, 69 (1st Cir. 2023). Moreover, the legality of event contracts on Kalshi's exchange is being actively addressed around the country—including in five "almost identical actions" against the same Defendants, which Plaintiff's counsel has filed for similar Delaware LLCs in other States. *One and Ken Valley Housing Group*, 716 F.3d at 225. The resolution of the federal issue here thus would have substantial "ramifications" not just in this case but also "for other cases" across the country. *AMTAX Holdings 227*, 15 F.4th at 558.

## C. The Federal-State Balance Confirms This Case Belongs In Federal Court

The "congressionally approved balance of federal and state judicial responsibilities" also favors federal jurisdiction. *Grable*, 545 U.S. at 314. Congress enacted the CEA to provide a "comprehensive regulatory structure to oversee" the derivatives markets and "to bring the markets

under a uniform set of regulations." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1155-56 (7th Cir. 1992). And in the CEA, Congress gave the CFTC "exclusive jurisdiction" to regulate derivatives trading on designated exchanges. With that grant of exclusivity, Congress made clear its "judgment" about the important "federal interest in uniformity." *Rhode Island Fishermen's All.*, 585 F.3d at 51; *One and Ken Valley Housing Group*, 716 F.3d at 225. Exercising federal jurisdiction here thus preserves the "congressionally approved balance of federal and state judicial responsibilities" by providing a federal forum for uniform application of federal law. *Rhode Island Fishermen's All.*, 585 F.3d at 51.

Plaintiff counters (Mot. 8) that Congress did not create a federal cause of action relating to gambling losses, but once again that is irrelevant. *Grable*, 545 U.S. at 309. *Grable*'s central point is that a federal forum should exist for cases raising federal issues embedded in *state*-law claims. Regardless, the CEA *does* create private causes of action for parties injured by certain violations of the CEA—and gives federal courts "exclusive jurisdiction" over such actions. 7 U.S.C. § 25(a), (b), (c). Plaintiff cannot avail itself of those causes of action because (among other reasons) the event contracts here comport with federal law. But their existence "signal[s] that [this Court] will not upset the appropriate balance of federal and state judicial responsibilities by exercising federal jurisdiction." *NASDAQ OMX Grp., Inc v. USB Sec., LLC*, 770 F.3d 1010, 1030 (2d Cir. 2014). This is heartland *Grable* territory.

## II.    This Court Has Diversity Jurisdiction Under CAFA

This Court independently has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d). "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). A "class action" is defined for CAFA purposes

as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar* State statute or rule of judicial procedure authorizing an action to be brought *by 1 or more representative persons* as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphases added). This is a "broad definition." *Wilkins v. Genzyme Corp.*, 93 F.4th 33, 42 (1st Cir. 2024). With CAFA, "Congress expressly expanded federal jurisdiction largely for the benefit of defendants against a background of what it considered to be abusive class action practices in state courts." *Amoche v. Guarantee Tr. Life Ins. Co.*, 556 F.3d 41, 49 (1st Cir. 2009). Given CAFA's "clea[r]" purpose "to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction," it is the suit's substance—not its form—that determines whether it is a class action. *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008); *accord Standard Fire Ins.*, 568 U.S. at 595 (declining to "exalt form over substance" for CAFA's jurisdictional analysis).

CAFA's requirements are met here. Plaintiff does not dispute that the parties are minimally diverse, that the aggregate amount in controversy exceeds $5 million, or that it is seeking to recover losses on behalf of more than 100 people. Nor could it. According to the complaint, Plaintiff purports to bring suit to recover the "tens of millions of dollars" lost "[e]ach year" by "thousands of individuals within Massachusetts." Compl. ¶¶ 6, 65. That liability purportedly arises from a common course of conduct—namely, Defendants' operation of "substantially identical" markets that facilitate transactions in event contracts with a "common form." *Id.* ¶¶ 32, 37-38. And Plaintiff seeks a declaration that Defendants are liable for violating Massachusetts's Statute of Anne—prospective relief that would benefit the class uniformly by sparing "the thousands of individuals within Massachusetts [that] have lost—and continue to lose—money" and stopping an alleged "pandemic of gambling addiction." *Id.* ¶¶ 62, 64-65, Prayer for Relief. Those are paradigmatic class-action allegations.

Plaintiff rejoins (Mot. 12) that its suit is not a "class action" merely because Plaintiff did not style its suit as such or seek to "join" Massachusetts residents. But that misses the point. CAFA requires courts "to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010); *see Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017) (CAFA is not "confined solely to lawsuits that are labeled 'class actions'"). And "[a] complaint that contains class-type allegations historically has been assumed to assert a class action." *Coll. of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 40 (1st Cir. 2009).

Indeed, Plaintiff's suit can proceed, if at all, *only* as a class action. Massachusetts' Statute of Anne "does not contemplate the kind of wholesale recovery [Plaintiff] seeks." *Patriots for Legal Equality, LLC v. Draft Kings, Inc.*, 2016 WL 11972483, at *5 (Mass. Super. Ct. Feb. 23, 2016). Instead, third-party Statute of Anne claims ordinarily must proceed one-by-one: The third party must identify a "specific person who lost money" on a "specific transaction within Massachusetts more than three months before the commencement of th[e] case." *Id.*; *see Salamon v. Taft Broad. Co.*, 475 N.E.2d 1292, 1297 (Ohio App. 1984) (Ohio's Statute of Anne creates a "separate cause of action" for each gambling loss of "a specific definite person"). If Plaintiff's suit on behalf of (and aggregating the claims of) thousands of Massachusetts residents can proceed at all, it can only be as a class action or "similar" action by a "representative perso[n]." 28 U.S.C. § 1332(d)(1)(B).

Plaintiff's contention that this case does not meet "all the core requirements of a class action—namely, numerosity, typicality, commonality, and adequacy of representation"—thus is hardly a basis to remand but only *more* reason Defendants deserve a federal forum. Mot. 10-11.

17

Plaintiff primarily asserts that its suit fails typicality. Mot. 11. That contention is questionable: Organizations often attempt "to proceed as … class representative[s]," even when "the organization" is not "technically" a "member of a class." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268-69 (4th Cir. 1981) (internal quotation marks omitted). But more fundamentally, it is irrelevant for CAFA removal purposes whether Plaintiff ultimately "will *succeed* in satisfying the requirements of Rule 23." *Connecticut Gen.*, 585 F.3d at 42 (emphasis added); *accord Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, 121 F.4th 228, 236 (1st Cir. 2024) (district court retains jurisdiction under CAFA even if class certification is denied). Whether a plaintiff can satisfy typicality "is appropriately addressed … under Rule 23's established protocol." *Connecticut Gen.*, 585 F.3d at 41. CAFA makes clear that defendants are entitled to have that and other class-action prerequisites adjudicated by a federal court. Suits that seek to aggregate absent individuals' claims but admittedly flunk Rule 23's criteria—and thus lack its safeguards—are the ones Congress had the most reason to make removable to federal court.

Plaintiff also misplaces reliance on cases declining to treat state *parens patriae* actions as class actions. *See, e.g.*, *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 48 (D. Mass. 2020). *Parens patriae* suits "d[o] not involve the States stepping in to represent the interests of particular citizens" but rather the State's assertion of an injury to *its own* "'quasi-sovereign' interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600-01 (1982). And whereas "the modern class action" derives from the common law "bill of peace," *Trump v. CASA, Inc.*, 606 U.S. 831, 848–49 (2025), the *parens patriae* action "has its roots in" a wholly distinct "common-law concept of the 'royal prerogative,'" *Snapp*, 458 U.S. at 600. That *sui generis* form of action—a sovereign's unique prerogative (with its own idiosyncratic history) to assert a

sovereign or "quasi-sovereign interest" on behalf of its people—is fundamentally different from a class action. *LG Display Co. v. Madigan*, 665 F.3d 768, 771 (7th Cir. 2011) (reciting history). Plaintiff asserts no sovereign or quasi-sovereign interest on behalf of the Commonwealth. Its attempt to coopt private interests—attempting to recover for itself the losses of thousands of individual Massachusetts residents—looks nothing like a *parens patriae* suit. Compl. ¶ 65. Plaintiff's purported *en masse* claim thus must proceed as a class action—and satisfy Rule 23's strictures—or not at all.

While Plaintiff argues that it has not brought a representative action under the Statute of Anne (Mot. 12), Plaintiff ignores that its complaint also seeks prospective relief declaring Defendants liable under Massachusetts's statute—relief that would inure uniformly to the class's benefit, by allegedly sparing thousands of Massachusetts's residents from "los[ing] money in the long run." Compl. ¶¶ 61, Prayer for Relief. That Plaintiff cannot *properly* seek this relief and aggregate others' claims means the suit will ultimately fail—not that it belongs in state court.

## CONCLUSION

The Court should deny Plaintiff's motion to remand. If the Court grants the motion to remand, it should deny Plaintiff's request for costs and fees.

November 12, 2025                                   Respectfully submitted.

                                                   */s/ Nicholas J. Schneider*
                                                   Craig Waksler (BBO No. 566087)
                                                   Nicholas J. Schneider (BBO No. 688498)
                                                   Eckert Seamans Cherin & Mellott, LLC
                                                   2 International Place #1600
                                                   Boston, MA 02110
                                                   Phone: (617) 342-6890
                                                   Fax: (617) 342-6899
                                                   CWaksler@eckertseamans.com
                                                   NSchneider@eckertseamans.com

Eugene Scalia (*pro hac vice*)
Jonathan C. Bond (*pro hac vice*)
Nick Harper (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington, D.C.  20036
Phone:  (202) 955-8500
Fax:  (202) 530-9603
EScalia@gibsondunn.com
JBond@gibsondunn.com
NHarper@gibsondunn.com

*Counsel for Defendants Robinhood Derivatives, LLC and Robinhood Markets, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 12, 2025, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those parties who are non-registered participants.


*/s/ Nicholas J. Schneider*
Nicholas J. Schneider